Syd Gelman, Plaintiff, *v.* Charles Pepper et al., Defendants.

Supreme Court, Special Term, Kings County, April 26, 1954.

*Wm. Marino* for Charles Pepper, defendant.

*Louis Friedman* for plaintiff.

Moss, J. This is a motion by defendant Charles Pepper to dismiss the complaint or stay this action on the ground that plaintiff willfully failed to appear for examination before trial pursuant to notice served upon plaintiff's attorneys.

Plaintiff's attorneys offer to produce plaintiff but object to the use of a recording machine to record the testimony on the ground that there is no authority for the use of such a device at an examination before trial in Kings County.

In *Gotthelf* v. *Hillcrest Lumber Co.* (280 App. Div. 668), the Appellate Division, First Department, held that a recording device may be employed in examination before trial, over the objection of a party being examined. The majority court (Peck, P. J., Cohn and Breitel, JJ.), at page 669, made the following statement: " We can take judicial notice of the fact that disc recording is accurate and of satisfactory fidelity. While it is possible that a machine may be manipulated in such a way as not to take down all that is said and a record might be tampered with, the latter happening could surely be detected and the former can easily enough be guarded against. Tampering and mistakes are at least equally likely in the case of stenographic recordings, and in any event the witness has the protection of not having to subscribe to any transcript which is not accurate. As we view the requirement of rule 129 of the Rules of Civil

Practice, that an oral examination by deposition shall be conducted in the same manner as on a trial, that means the traditional question and answer form of examination shall be employed. It does not relate to the mechanics of recording the testimony, and certainly the provisions in section 290 *et seq.* of the Judiciary Law, relating to court stenographers, are not applicable to examinations before trial where court stenographers are not used. In view of the extended use of examinations before trial and the shortage of competent stenographers to take down testimony, it is understandable that members of the Bar should look for a practical, economical and reliable mechanical substitute."

The minority or dissenting opinion (DORE and CALLAHAN, JJ.) stated: "We dissent and vote to reverse and deny the motion. In our opinion the use of a recording machine would indicate that the examination was not conducted in the manner provided in rule 129 of the Rules of Civil Practice. We are not called upon to decide at this time whether the use of recording machines would be an advantageous step or the use of a particular type of machine should be approved while another might be disapproved. Such questions should be decided by those who have the duty to draft the Rules of Civil Practice."

In view of the sharp difference of opinion of the learned justices of the Appellate Division of the First Department, and the fact that the Appellate Division, Second Department, has not yet spoken on the subject, this court feels that it should not be considered taking undue liberties in adopting the minority view with respect to this motion in Kings County. The court will now state the grounds for its decision.

The determination of the motion hinges on the interpretation of the language of the rule requiring examinations by depositions to be conducted "in the same manner as on the trial". Testimony in actions and proceedings in the courts of this State are recorded either by shorthand or stenotype reporters.

Were there a substantial reason for allowing the recording, the court would still feel that the change would have to be made by "those who have the duty to draft the Rules of Civil Practice." However, in the case under consideration, there has been no showing of the necessity for a change, nor of any dearth of competent stenographers to record the examination "in the same manner as on the trial." It is common knowledge that there is an ample supply in this city of competent certified shorthand reporters licensed by the State of New York who are avail-

able for the work of taking examinations before trial. Where such examinations are conducted at Special Term, Part 2, there are also available official court reporters, where request for their services may be made.

This court is confident that it bespeaks the experience of all of the justices of this court in stating that certified shorthand reporters and official court reporters have at all times performed their services to the complete satisfaction and approval of the Bench and Bar. The printed proceedings and files of the New York State Shorthand Reporters Association, which has been in existence since 1876, are replete with expressions of commendation and appreciation by many distinguished jurists and members of the Bar of the work of the official and certified shorthand reporters.

A recent study was made by a committee appointed by the New York State Shorthand Reporters Association for the purpose of collating facts concerning the potentiality of sound recording as a medium to replace verbatim reporting. The report entitled " Sound Recording in the Courts " states that in those tribunals where the experiment of recording proceedings by automatic devices has been attempted which had come to the committee's notice, the use of such machines was found to be definitely inferior to manual recording by verbatim reporters; that after a lengthy trial period the board of estimate of the city of New York abandoned the use of such machines in favor of verbatim reporters; and that the president of the Puerto Rico Bar Association and other prominent lawyers there found sound recording machines to be " wholly unsatisfactory ". The United Nations officials have likewise gone on record in favor of verbatim reporters.

In connection with the investigation of the Puerto Rico Bar Association, its president reported in part as follows: " The Bar Association has received universal criticism from its members as to the use of the dictaphone recorders in the district courts. A survey and investigation of the system has revealed that every lawyer interrogated has expressed himself adversely. The investigation has led this Bar Association to the conclusion that the recording system is not only far from being successful or adequate, but that it should be eliminated from the courts without further loss of time. The Association has reached the further conclusion that nothing can take the place of the court reporter, if the rights of the litigants are to be protected, and

if the testimony of the witnesses who appear to testify is to have any value."

It is pertinent also to note that Dean Griswold of the Harvard Law School, in a recommendation respecting the manner in which investigations and inquiries of congressional committees should be conducted, stated that witnesses " should be protected from television and any other recording form but a stenographic transcript ". (See *New York Times,* March 25, 1954, ed. p. 28, col. 5.)

The court, therefore, holds that the taking of testimony of parties or witnesses at an examination before trial by shorthand or stenotype reporters is the only method of reporting such testimony which the framers of rule 129 of the Rules of Civil Practice have authorized.

The motion of defendant Pepper is denied. Settle order on notice.

This interdiction against the use of recording machines is intended to be confined exclusively to court reporting. It is not to be deemed a reflection in the slightest degree on the efficient use of recording machines in the business world or even by judges and courts in matters other than the reporting of testimony. In this connection, this court itself for many years has used a recording machine in his chambers for correspondence and miscellaneous dictation, other than the taking of testimony, and has found such use invaluable.